John A. Poor & another *vs.* Samuel Larrabee.

Same *vs.* Daniel B. Hinkley & another.

Same *vs.* John S. Kimball.

| 58 | 543 |
|----|-----|
| 88 | 315 |

| 58 | 543 |
|-----|-----|
| 102 | 225 |

| 58 | 543 |
|-----|-----|
| 103 | 61 |

*Real action—evidence by defendant. Attachment of real estate. Assignee of tenant in dower—possession of, not adverse to reversioner. Statute of limitations as applicable to reversioner. Administrator's deed—date and acknowledgement. Assignee of tenant in dower entitled to betterments.*

In the trial of a real action, it is competent for the defendant in possession, under the general issue, to disprove the seisin of the demandants as alleged in the writ, by showing that the party, under whom they claim, had neither title nor possession at the time of the conveyance under which they claim.

Thus, where the demandants' title depended upon an alleged attachment, seasonably followed by a levy on real estate made in favor of the demandants' grantor against his debtor, the tenant may, for the purpose of disproving the demandants' seisin within twenty years, show that the alleged attachment was void, and that after the attachment, but prior to the levy, the debtor was decreed a bankrupt under the United States Bankrupt Act of 1841, and that the demandants' grantor's debtor did not have possession when the levy was made.

The Stat. of 1838, c. 344, § 4, which provided that it should be necessary to the validity of an attachment of real estate that the plaintiff should set out in his writ, specifically, the demand or claim on which his action is founded, applied to suits pending at the time the act took effect as well as to those subsequently commenced.

The administrator of the intestate estate, to which belonged the lots of land in controversy, under a license from the probate court, conveyed them to the defendants' grantors, and the widow, to whom the land had been assigned as dower against common right, joined in the deeds, to convey and release her dower. Thereupon the defendants' grantors entered and erected a brick block upon the premises. In a real action by the grantee of the levying creditors of the heirs of the intestate; *Held*, (1) That during the life of the widow, the defendants cannot be regarded as holding adversely to the reversioners; and (2) That it is incompetent for the defendants to question the regularity of the probate proceedings by which the dower was assigned.

An assignment of dower made by commissioners appointed without objection by the court of probate, and duly returned to and accepted by the judge of probate, is final and conclusive upon all parties thereto and their privies, when the decree of acceptance is not appealed from.

The statute of limitations does not begin to run against a reversioner during the continuance of the particular estate.

A reversioner, during the continuance of the life-estate, is under "legal disabili-
ty" within the meaning of Public Laws of 1821, c. 52, § 12 (R. S. of 1857, c. 71,
§ 28), so that he may bring an action within five years after the termination of
the life-estate to recover land sold under an administrator's license, more than
five years before the commencement of the action.

If, under a license duly issued by the probate court, an administrator, after tak-
ing the oath and giving the bond prescribed by the statute, regularly sell the
land described in his license, at public auction, and execute and deliver a deed
thereof to the purchaser, within a year from the date of his license, then the
title passes, although the deed was not acknowledged until after the expiration
of the year.

*Aliter*, where the land was duly sold and struck off to the purchaser before,
but the deed thereof was not executed and delivered until afterwards.

In the absence of other evidence a deed may be presumed to have been executed
and delivered on the day of its date.

Where an administrator's deed was dated within a year from the date of his
license, but was not acknowledged until after, the more prudent course, in the
absence of other controlling facts, is to require such a turn to be given to all
doubtful matters *ut res magis valeat quam pereat.*

Public Laws of 1843, c. 6, § 1, embodied in R. S. of 1857, c. 104, § 23, did not affect
the rights of reversioners in any improvements made prior to the time when
that statute took effect.

*Aliter*, as to improvements made since.

On report.

WRITS OF ENTRY for four lots adjoining of land with stores and
wharves thereon respectively, situate in Bangor, on the west side
of Exchange, formerly Poplar street.

The land in controversy was formerly the property of Zadoc
French (under whom both parties in each suit claim), who died
intestate in the spring of 1831, leaving three sons, Ebenezer, Fred-
eric F., and George S. French, his only heirs.

On Aug. 29, 1831, through proceedings in the probate court for
this county, the lots in controversy with others were assigned to
Bulah French, widow of Zadoc, as her dower "against common
right." She died April 18, 1863.

April 3, 1833, Frederic conveyed all his interest in his father's
estate to his brothers Eben and George; but the deed was not de-
livered until March 23, 1836, when it was recorded. It contained
the clause "providing that said (grantees) are to save said Fred-
eric free from all claims harmless, on any deeds or conveyances

which he may have signed, and acknowledged to convey any of said real estate mentioned in this deed."

On Aug. 14, 1837, one A. G. Brown, on a writ in his favor against Ebenezer French, caused the latter's real estate to be attached. The writ was entered at the October term, 1837, and continued till the June term, 1843, when it was defaulted and continued for judgment till June term, 1845, when judgment was rendered, and within thirty days thereafter the execution issued upon the judgment was levied upon Ebenezer French's undivided half of the demanded premises. The writ contained a count on a note and a general money count, without any specification of claim to be proved under it.

On Oct. 10, 1837, one Wiggins Hill sued out a writ in his own favor, upon a note against George S. French, which was duly entered and continued from term to term till June term, 1838, when it was defaulted and continued for judgment to October term, 1842, when judgment was rendered; and within thirty days thereafter the execution issued upon the judgment was levied upon George S. French's undivided half of the demanded premises.

On July 25, 1843, Brown conveyed the land levied upon by virtue of his execution to one of the plaintiffs (George Stetson), who, on July 18, 1843, conveyed one-half of his interest to the other plaintiff (Poor); and, on April 13, 1843, Hill conveyed his levy to said Poor, all of which deeds were seasonably recorded.

Ebenezer French was appointed administrator of his father's estate, and at the June term, 1831, of this court, he was duly licensed to sell real estate of his intestate at auction, sufficient to pay the sum of $25,000 of the just debts and incidental charges, his whole real estate being inventoried at about $60,000. The court at that term adjourned, finally, on June 18, 1831. Before acting under the license, the administrator gave the bond, took the oath and gave the notice prescribed by the statute, and sold the lots in controversy at public auction, on June 14, 1832.

The defendants, severally, offer the following described deeds, given by the administrator, viz.,

1.  Deed "A." to Frederic F. French, of the "Kimball lot," dated June 29, 1832, and acknowledged next day.

2.  Deeds "B." and "C.;" the former to the defendant Larrabee, and the latter to D. E. Wadleigh, of the lots claimed in the Larrabee suit, both dated June 14, 1832, and acknowledged July 16, 1832.

3.  Deed "D." to D. E. Wadleigh, of the Hinckley & Egery lot, dated June 14, 1832, acknowledged Jan. 22, 1833.

F. F. French conveyed the "Kimball" lot (conveyed to him by deed "A.") to Pillsbury & Davis, by warranty deed, dated and recorded June 17, 1833, and it is admitted that this title is now held by Kimball's landlord, under whom Kimball holds the premises as tenant for years; also, that the premises in deed "C." have since been conveyed to Larrabee, and those in deed "D." to Hinckley & Egery, tenants in the suit at bar.

After receiving their respective deeds, the grantees, in 1832, severally entered upon the lots in question, and, during that or the next year, erected a block of brick stores on the lots, and made other improvements, and have continued to occupy the same until the present time, and for these improvements and erections a claim was filed for betterments.  Some improvements were also claimed to have been made on the lots since the statute of March 4, 1843, went into force.  The demandants also filed request for estimation of value of the land, without the improvements, agreeably to statute.

The tenants offered the following facts in evidence, all which are objected to as irrelevant, viz.,

Ebenezer and George S. French were both bankrupts under the United States Statute of 1841.  Their petitions were both dated Feb. 21, 1842, filed Feb. 25, 1842, decreed bankrupts April 5, 1842, and both were discharged; Ebenezer by decree dated Jan. 30, 1844, and George by decree dated Aug. 6, 1842.

Defendants offer to prove further that the deeds were all made out by Wm. Abbot, Esq.  The one to F. F. French was originally dated June 14, 1832, and the consideration was paid on that

day, but George B. Moody altered the date to the 29th to make it accord with the date of release of dower annexed to the deed. Plaintiffs object to the admission of the testimony as irrelevant.

The defendants also alleged that certain facts have a tendency to show frauds in the levies, as follows, viz., that George's interest in the Kimball store was set off for $450, Eben's interest in same for $300, George's interest in the Larrabee corner store was set off for $450, Eben's for $375.

That George's interest in the other Larrabee store was set off for $450. Eben's for $300.

And similar facts respecting the Hinckley & Egery store. That the Kimball store was worth at that time, in cash, $3,000. Larrabee corner store $3,500, and the other $3,000, and so of the Hinckley & Egery store, and that they have been worth those sums ever since.

That the appraisers were induced by the creditors, or their attorney, through misrepresentation, that they should not include in the valuation any buildings, or erections, in their estimate of the value of the land; that none of the defendants or persons under whom they claim were present at the levies, or had any knowledge of the same; that said appraisers were also induced to appraise said property lower than their value, by a representation that there was doubt whether the debtors had any interest in the property. Plaintiffs denied all said allegations, and on the contrary averred that at the time of said levies the property, and all property, was greatly depreciated in value, and that the valuation was made fairly, and without any improper influence from the creditors, or their attorney, and object to the admission of all the testimony.

If these facts are admissible, and have any tendency, such as could authorize a verdict, if proved, to show fraud so as to affect the levies or avoid them, then the cases to stand for trial.

The cases were submitted to the full court for decision, according to the legal rights of the parties, the court to draw conclusions of fact from the evidence or case reported as a jury might do. If the

actions cannot be sustained, a nonsuit to be entered, otherwise a default, except as above agreed, and in the case of a default to decide if the tenants are entitled to betterments, if so, the question of their value and of the value of the land without the improvements, is to be submitted to a jury, unless the parties agree on some other mode of adjustment.

. The administrator's deeds were all in common form,—made on same kind of blank.

Annexed to deed " A.," after the certificate of acknowledgment of the grantor, Ebenezer French, was the following :

"And I, Bulah French, widow of the aforesaid Zadoc French, for the consideration aforesaid, do hereby remise, release, and relinquish to the said Frederick F. French, and his heirs and assigns forever, all my right and title to dower, in and to the aforegranted premises.

" In witness whereof, I, the said Bulah French, have also hereunto set my hand and seal, this twenty-ninth day of June, in the year of our Lord, one thousand eight hundred and thirty-two.

BULAH FRENCH.  [Seal.]

In presence of
GEO. B. MOODY.

" I certify that this deed of release was annexed to the foregoing instrument of conveyance from said Ebenezer French to said Frederick F. French, before either of said instruments were signed.

(Signed)                    GEO. B. MOODY, *Justice Peace.*"
Recorded July 5, 1832.

The attestation clause of deed " B." was as follows :

" In witness whereof, I, the said Ebenezer French, administrator as aforesaid, have hereunto set my hand and seal, this fourteenth day of June, in the year of our Lord, one thousand eight hundred and thirty-two. And Bulah French, relict of the said Zadoc French, in consideration of one dollar paid by said Samuel Larrabee, doth hereby sell and release to him her dower and all the interest which she hath in the premises."

The attestation clauses of deeds " C." and " D." were the same *mutatis mutandis.*

*A. W. Paine,* for the plaintiffs, in addition to many propositions sustained by the court, contended,

That the administrator's deeds were not fully executed during the life of his license; that the license expired June 18, 1832; that the deeds of the Larrabee and Hinkley lots were not acknowledged until the year had expired. The acknowledgment is part of the deed, and is so regarded by the courts and legislature. An express provision requires it. Without it, the deed is only provissionally or partially good,—good only against parties and persons having notice. The deed conveys the title, absolutely, only when acknowledged. Without acknowledgment the deeds could not have been recorded, and the land would have then been exposed to attachments. *Dole* v. *Thurlow,* 12 Met. 157–162; *Call* v. *Buttrick,* 4 Cush. 345; *Gibbs* v. *Swift,* 12 Cush. 393.

If it be part of the deed, it can be performed by the administrator only while his license lasts.

It is the administrator under his license who acknowledged, and no other acknowledgment is good.

Being no legal acknowledgment there can be no legal record, for a deed not properly acknowledged cannot be properly recorded.

But if acknowledgment be not part of the deed, the deed must be signed, sealed, and delivered within the year. *Wellman* v. *Lawrence,* 15 Mass. 326; *Macy* v. *Raymond,* 9 Pick. 285; *Jewett* v. *Jewett,* 10 Gray, 32; *Marr* v. *Boothby,* 19 Maine, 573; *Marr* v. *Hobson,* 22 Maine, 321.

In Massachusetts, by the express provision of the statute, deeds made after the year has expired to perfect a sale made before are good. Stat. of Mass., 1840, c. 97; R. S. Mass., 1860, c. 102, § 47.

Maine has no such statute. A similar statute, covering some defects incident to administrator's deeds, was enacted, but does not embrace the defect in question. R. S. of 1841, c. 112, § 35; R. S. of 1857, c. 71, § 29.

Under these statutes *Marr* v. *Boothby, supra,* and *Mason* v. *Ham,*

36 Maine, 573, were decided. These statutes could not affect case at bar, inasmuch as the statute was not enacted until long after the deeds were made.

Where a deed is completed, bearing date even with its acknowledgment, there would seem to be no doubt that in the absence of all evidence, the deed was delivered on the day of its date or execution. The presumption fails when it is apparent from the face of the deed that it was not completed at the time of its date. Thus where it refers to one of a later date, the presumption could not prevail. *Sweetsir* v. *Lowell*, 33 Maine, 446. See also, *Smith* v. *Porter*, 10 Gray, 68 ; *Jackson* v. *Hill*, 5 Wend. 532–3 ; 2 Washb. on Real Prop. 578.

The presumption does not prevail in respect to deeds not acknowledged. *Elsy* v. *Metcalf*, 1 Den. 323 ; *Jackson* v. *Stevens*, 16 Johns. 110 ; *Doe* v. *Howland*, 8 Cow. 277 ; *Osterhart* v. *Shoemaker*, 3 Hill, 513 ; *Brown* v. *Burton*, 5 Dowl. & L. 289, 2 B. C. 220.

Where a deed is acknowledged by several grantors, on different days, all subsequent to the date, the presumption that it was delivered on the day of its date is destroyed. *Henderson* v. *Baltimore*, 8 Md. 352 ; *Loomis* v. *Pingree*, 43 Maine, 299. The date indicating the day of completion must represent the day of delivery ; but when on its face it shows itself incomplete on the day of its date, the presumption of delivery then fails.

Acknowledgment is one of the essentials required by the statute. It is the means necessary for its preservation and protection of the title. It is so essential that the statute carefully provides a remedy for the defect. R. S., c. 73, §§ 17 to 23 inclusive.

The defendants have all the means of proof, and if the delivery did actually take place before acknowledgment, they can show it and overcome the presumption.

*J. A. Peters*, for the defendants, after elaborately discussing the point concerning the delivery of the deeds sustained by the court, contended,

That as to deed " A." the defendant must recover upon adverse possession ; that Mrs. French did not convey any dower, but merely

relinquished her right which was a waiver only; that the defendant was not under any life-estate, because there was none, and he had purchased none.

Plaintiffs cannot recover because of disseisin in all the cases. It is no answer to say that any of the defendants held a life-estate, for they claimed under administrator's deeds; that the plaintiffs are estopped from denying such a seisin as would entitle them to an action, because in their levies they acknowledged a seisin in each case, instead of accepting the assignment of a remainder, as by statute. So they could have sued within the assumed life-estate, or else their levies were void.

Defendants hold by disseisin because they are not the direct grantees of the administrator and his mother; and because the tenants supposed and believed that they were absolute owners against all the world, and always acted as such. Will the court decide that we were in law conscious of having a life-estate, and that we were putting an immense value, by way of improvement, upon that estate, of a permanent character? We maintain that if a person holds land for twenty years, believing himself an absolute owner, and in all respects acting as such, that a disseisin is obtained, no matter how much or how little title he has, or how he got it. The very object of the law is to make even his mistakes a protection to him. The tenants would naturally have supposed that Mrs. French merely released a right of dower. Most professional men would have supposed the same thing. Mrs. French nowhere appears in the body of the deed. Her act was in fact merely a waiver. It so resulted. See 23 Maine, 276; 27 Maine, 381; 33 Maine, 396.

Plaintiffs' levies were void because attachments lost by the bankruptcy of the French's. *Bowley* v. *Bowley*, 41 Maine, 543; *Stone* v. *Everett*, 3 Story, 446.

If, notwithstanding the bankruptcy, the plaintiffs had a lien by attachment, it was only for what existed at the time of the bankruptcy, for the debt and not the subsequent costs; and the lien was drowned by levying for both debt and costs. The debts could have been proved in bankruptcy. *Haggerty* v. *Amory*, 7 Allen, 458.

The attachments were lost by a want of continuance of the action at the June term, 1842. There was a break which will make void the attachments, even though judgment was made up regularly. This is settled precisely in the case of *Leighton* v. *Reed*, 28 Maine, 87.

Though the judgment may be good, the attachment became void. The copy of the docket, which may be found herewith, will show, that while other actions, standing for judgment, were continued (a few put into a copy as a sample), these cases were not, unless included in the order. First, before final order, which is copied. These actions which had been defaulted, and were ready for judgment, could not be included in the general continuance.

Dower was not correctly set out to Mrs. French.

The attachment void, the writ containing money count without any specification.

Levies erroneous, being for too much by seventeen cents. *Brown* v. *Lunt*, 37 Maine, 423; *Oatman* v. *Walker*, 33 Maine, 71; *Glidden* v. *Chase*, 35 Maine, 90. His return of items when he makes them is conclusive. *Boyd* v. *Page*, 30 Maine, 460.

The remedial act, R. S., c. 76, §§ 20, 21, so far as these levies are concerned, would be retrospective and unconstitutional.

In neither of the levies was the dower of Mrs. French noticed so far as the *locus in quo* is concerned. A seisin instead of assignment was given.

One-third of lot in deed " A." was not reached by the plaintiffs' attachments, because F. F. French's deed of June 17, 1833, conveyed it to Pillsbury and Davis under whom defendant now claims.

Defendants entitled to betterments made since March 4, 1843. Act of that year.

Why does not the five years' limitation apply here? See that and other provisions in R. S., c. 71, §§ 28, 29. This would apply to all the cases. The retrospective part of this act is constitutional. *Beal* v. *Nason*, 14 Maine R. 344.

There was fraud in the levies; and if all else fails in respect to any portion of the estate sued for, then a jury must pass upon the question. *Hilton* v. *Hanson*, 18 Maine, 397.

The case shows deceit, and circumvention practiced upon the appraisers. If such conduct as is offered to be shown here does not amount to enough to submit a question of fraud to a jury, then there is no remedy for extraordinary cheating, when done by attorneys and officials.

BARROWS, J. The several parcels of land demanded in these suits formed a part of the estate of Zadoc French, who died intestate in the spring of 1831, leaving three sons, Ebenezer, George, and Frederic, his only heirs. The demandants claim title under levies made in 1843 upon the several lots in question as the property of Ebenezer and George, to whom Frederic had made a deed, dated April 3, 1833, of all his interest in his father's estate containing the following clause, " providing that said (grantees) are to save said Frederic free from all claims harmless on any deeds or conveyances which he may have signed and acknowledged to convey any of said real estate mentioned in this deed." This deed was not delivered until March, 1836, when it was recorded. But previous to that time, viz., on June 17, 1833, Frederic French had made a warranty deed of one of these lots to parties under whom the present tenant holds.

The tenants, and those under whom they claim, have been in actual possession of the demanded premises since some time in the year 1832, when they entered and forthwith made expensive and permanent improvements, erecting a brick block upon the premises, claiming title under deeds from the administrator of Zadoc French, in which deeds Bulah French, the widow of Zadoc (to whom these with other lots had been assigned in August, 1831, by proceedings in the probate court to set out her dower against common right), joined for the purpose of conveying or releasing her dower.

Bulah French lived until April 18, 1863. These suits were commenced July 20, 1863, the demandants denying the validity of the administrator's deeds, and claiming that the tenants cannot be considered as disseisors during the lifetime of Bulah French, whose

estate they held by virtue of valid conveyances from her as above stated.

The tenants, or those whose title, good or bad, the tenants hold, have been in possession of the demanded premises since 1832.

The demandants must recover, if at all, on the strength of their own title, and, until they show a title in themselves, they cannot rely upon any defects, real or supposed, in that of the tenants.

They claim under attachments made by their grantors in 1837 (long after the tenants or their grantors were in possession of these lots), of all the right, title, and interest which Ebenezer French and George French respectively had in and to any and all real estate in the county of Penobscot.

Their levies were not made until 1843. If their attachments were valid and duly preserved, levies regularly made in pursuance thereof would transmit to the demandants' grantors such title as Ebenezer French and George French respectively had at the dates of the attachments in 1837. But if their attachments were invalid, they would acquire only such seisin and title as the debtors, Ebenezer and George respectively, had at the dates of the levies. Before the levies were made, viz., on the 5th of April, 1842, Ebenezer French and George French had been severally decreed bankrupts upon petitions filed February 25, 1842, under the statute of the United States passed in 1841 to establish a uniform system of bankruptcy, and all their right, title, and interest in real estate had vested in their assignees, subject to such liens as had been created by valid subsisting attachments. It becomes necessary to examine into the validity of these attachments. The demandants' grantors acquired nothing by their levies unless they can be made to hold from the date of the original attachment in 1837; for, when the levies were made, the debtors had no seisin either in fact or in law. The tenants' grantors had the actual possession, and whatever legal estate Ebenezer and George may have had before their bankruptcy, it passed at that date to their assignees, unless prevented by the existence of a valid attachment.

It is argued for the demandants that the tenants cannot set up

an outstanding title in a third party under whom they do not claim, to defeat the action. But it is clearly competent for the tenants to disprove the seisin of the demandants, as alleged in their writ, by showing that the party under whom they claim had neither title nor possession at the time of the conveyance under which they claim. *Stanley* v. *Perley*, 5 Greenl. 369; *Chaplin* v. *Barker*, 53 Maine, 275.

Looking now at the writ against Ebenezer French, we find it contains, in addition to a count upon a promissory note, a general money count without any specification of claims to be proved under it. It has been decided that an attachment of real estate made upon such a writ is invalid and of no effect. *Saco* v. *Hopkinton*, 29 Maine, 268; *Osgood* v. *Holyoke*, 48 Maine, 410.

Nor can it avail the demandants that the attachment was made a few months before the passage of the statute of 1838, c. 344, under which, as revised but not changed, in 1841, R. S., c. 114, § 33, the decisions above referred to were made. The suit was still pending when the statute was passed and when it was embodied in the Revised Statutes of 1841. The attaching creditor could have no vested rights to be affected by the act declaring all attachments thus made to be void, until he had perfected his lien by levying his execution. Until that was done, the remedy by attachment on *mesne process* was entirely within the control of the legislature which created and might lawfully modify or abrogate it according to their own discretion.

The consequence is, that the demandants show no title to the undivided half of these lots which they claim under Ebenezer French, because the proof of seisin which they offer is rebutted by the proof that Ebenezer French had neither title nor possession when the demandants' grantors took their statute conveyance from him.

But we fail to see any valid objection to the proceedings under which the demandants claim to have acquired the title of George French in these lots. The attachment in the suit against him was properly made and preserved and perfected by a seasonable levy, so

that whatever interest he had in the property at the date of the attachment in 1837, finally vested, not in his assignee in bankruptcy, but in the levying creditor whose title the demandants hold.

The allegation that the attachment was lost by reason of a failure to continue the action for judgment at the June term, 1842, cannot be considered as sustained. It is true that the docket of that term does not now show a written entry of a continuance for judgment; but the cabalistic marks by which clerks are wont to signify those continuances are frequently hastily made in pencil, and are easily effaced; and the non-appearance of them cannot countervail the pregnant fact that the cases were regularly transferred to the docket of the next term, supported by the record of judgment, which recites a continuance from term to term and must, under these circumstances, be deemed conclusive evidence that the case was duly and regularly continued.

It becomes necessary, then, as the demandants have shown an apparently good title to George French's part of the land, to examine the title of the tenants, and ascertain whether or how far they have maintained their right to a judgment in their favor by proving a better title in themselves. They claim title by virtue of their long possession and improvement of the premises, and under and by virtue of the deeds, before referred to, from the administrator of Zadoc French and from Bulah French, to whom these lots had been assigned as part of her dower.

. They cannot, under these circumstances, make good a title by possession.

They held the life-estate of Bulah French by legal conveyances from her, and these suits were commenced very shortly after her decease.

While Bulah French lived they were rightfully in possession under their deeds from her, and that possession must be regarded as held under the legal title thus derived, and consequently is not and cannot be adverse to those claiming reversionary rights. *Varney v. Stevens,* 22 Maine, 331; *Austin v. Stevens,* 24 Maine, 520; *Moulton v. Edgecomb,* 52 Maine, 31.

It is not competent for the tenants in this suit to set up any alleged irregularities in the probate proceedings by which these lots were set out as dower to Bulah French, whose life-estate in the premises they have enjoyed under conveyances from her. They seek now to do so in order to place themselves in the position of disseisors as regards the title of the heirs, and to obtain the benefit of the statutes of limitation which we shall presently notice.

But that assignment was duly accepted by the court of probate. Neither the widow nor the heirs interposed any objection to its acceptance, or claimed any appeal from the decree of the court of probate confirming it, as either party might have done if there were any irregularities in the proceedings by which injustice was done them. They must be conclusively deemed to have assented to and accepted the assignment. Even a parol assignment, if assented to and accepted, would be held binding upon the parties. An assignment by means of proceedings in the court of probate, when not appealed from, is no less so. Such an assignment is only one form of a setting out of dower by the heirs, the judge of probate having no jurisdiction to appoint commissioners where the right of dower is disputed. This very assignment has been adjudged by this court conclusive upon the widow in *French* v. *Pratt*, 27 Maine, 396. It is equally so upon her grantees, and would undoubtedly have been held to be so upon the heirs and those claiming in privity with them, had they sought to enforce their claims during the lifetime of Bulah French. It was a matter of which the probate court in Penobscot county indisputably had jurisdiction, and the judgment of that court not being appealed from is final and conclusive upon all parties to it and their privies. These tenants took from Bulah French conveyances, which they present here among their muniments of title. It is not for them to say that she had no legal estate when they have so long enjoyed it under her grant.

Nor does the general statute of limitations bar the demandants' right to recover. They are within the exception made by clause third of § 3, c. 105, R. S. of 1857, and R. S. of 1841, c. 147, § 3,

clause third.    The statute of limitations does not begin to run against a remainder-man or a reversioner during the continuance of the particular estate.   *Durham* v. *Angier*, 20 Maine, 242; *Mellus* v. *Snowman*, 21 Maine, 201.

Neither is the case within the purview and effect of the statutes which have all along limited actions brought to try the title to lands sold under a probate license to the term of five years.   Statutes of 1821, c. 52, § 12; R. S. of 1841, c. 112, § 18; R. S. of 1857, c. 71, § 28.

The title of the tenants under the deeds of Zadoc French's administrator must prevail, unless it is made to appear that the sale was not made within the year during which the administrator's license to sell was in force.   If the sale was made within the year, the resort to the statute is unnecessary; if not so made it is useless; because a sale, made after the license has expired, cannot be said to be made under such license, and it is only to sales made under such license that the provision applies.   *Chadbourne* v. *Rackliff*, 30 Maine, 360.

We come, then, directly to the question of the validity of the tenants' title under the administrator's deeds.

The only flaw that is alleged to exist in these conveyances is, that they were not executed and delivered within the year after license to sell was granted to the administrator.   He got his license at the June term of this court, which adjourned finally on the 18th of June, 1831.   It seems to be conceded that that was the date of the license.   The case finds that he regularly gave his bond, took the oath, and gave the notice of sale required by law, and sold the lots in controversy at public auction on the 14th of June, 1832.

The deeds of the lots demanded in the suits against Larrabee and against Hinkley bear date on that day.   But it is claimed on the part of the demandants, that, inasmuch as these deeds, though dated June 14, 1832, the day when the auction sale took place, were not acknowledged by the administrator until July 16, 1832, and January 22, 1833, respectively, the sale was not completed within the year during which it might lawfully be made under the license, and so no title passed thereby.

In Massachusetts, under similar statute provisions, the supreme court decided, in *Macy* v. *Raymond*, 9 Pick. 284, that, although the estate had been regularly put up at public vendue and struck off to the purchaser within the year, no title passed by a deed reciting these facts, but bearing date after the expiration of the license.

If this doctrine had not been followed in a series of decisions in our own State, we might feel inclined to question the propriety of adhering to a rule so rigidly technical, and so liable to work positive injustice. But the decision was adopted and acted on by our own court in *Marr* v. *Boothby*, 19 Maine, 150 ; *Marr* v. *Hobson*, 22 Maine, 321, and *Mason* v. *Ham*, 36 Maine, 573. We deem it bad policy to overturn even a questionable decision upon which the title to real estate is made to depend, when it has been long acquiesced in, and many titles have probably been taken and transferred in pursuance of it.

But it still remains to be ascertained whether and how far the decision affects the titles of these tenants.

We start with the rule that it is incumbent on the tenants to show that the administrator's deeds were executed and delivered before the expiration of his license.

Is the acknowledgment of the administrator to be deemed an essential part of the execution of the deed, and necessary to pass the title ?

Cases are abundant to the point that a deed, though not acknowledged nor recorded, will pass the title to the estate as against the grantor and his heirs. *Lawry* v. *Williams*, 13 Maine, 281 ; *Buck* v. *Babcock*, 36 Maine, 491. An acknowledgment by one of the grantors, or something equivalent to it, is required before the deed can be recorded ; but ever since the first year of our existence as a State we have had statute provisions authorizing the reception of proof of the execution of the deed where the grantor had died or left the State without acknowledging it ; or when, being requested, he refused to acknowledge it ; and, in this latter case, if, upon a hearing the magistrate " is satisfied by the testimony of witnesses

that they saw the deed duly executed by the grantor, he shall certify the same thereon," etc. It seems, then, that a deed may be " duly executed " without an acknowledgment, and that the lack of the acknowledgment by the administrator merely, at the expiration of the license, would not defeat the sale if the transfer were in other respects complete. If the administrator had refused to acknowledge these deeds, the grantees might have proved their execution, and then their title would have been perfect against all the world without any further act on the part of the administrator. If the deed was in fact executed and delivered before the expiration of the license, the acknowledgment of these facts may be made by the administrator afterwards, for it was not essential to the making of a good conveyance between the parties. It was in fact made in season to admit the deeds to record long before George French's creditor attached his interest in the land; and even had they not been recorded, as the law stood then, the visible change of possession which took place in 1832, followed by the erection of brick stores upon the lots by the new occupants, would have been a sufficient notice to subsequent purchasers or attaching creditors. *Hanley* v. *Morse,* 32 Maine, 289; *Clark* v. *Bosworth,* 51 Maine, 528.

The question returns, were these deeds in fact executed and delivered before the expiration of the license? The case is singularly barren of evidence on this point. Setting aside the ingenious arguments of counsel, based principally upon matters which, if they are true, are not made to appear, and looking only at the report, we find ourselves left to the presumptions arising from the exhibition of deeds bearing date before, but not acknowledged until after the expiration of the license. These presumptions are not remarkably cogent in either direction. Nor do the decisions cited by counsel, somewhat conflicting in their character, lead to any very satisfactory conclusion. Where there is nothing on the face of the papers or in the evidence to indicate the contrary, the presumption undoubtedly is, that the execution and delivery took place on the day of the date. This presumption is strengthened by a fact agreed to in the case, that the grantees in 1832 entered and erected

a block of brick stores on the lots. But the deed to Hinkley was not acknowledged until 1833. It is hardly to be presumed that such an erection of an expensive block would have been made before the grantor had a deed, either actually or constructively delivered, so as to be operative.

The fact that the acknowledgment did not take place till a subsequent day has been variously construed by different courts.

With so little to make the matter certain, we think the more prudent course is that which was taken by our own court in *Loomis v. Pingree*, 43 Maine, 308, which was to read the transaction by the light of the maxim which requires such a turn to be given to all doubtful matters, *ut res magis valeat quam pereat;* and this curiously enough leads us logically to an opposite conclusion upon the question of fact from that which was reached in *Loomis v. Pingree, ubi supra.*

Assuredly, however, we do no violence to probabilities in presuming that there was at least a constructive delivery of these deeds by the administrator on the day of their date, and that they were left by him for the grantees with the scrivener until such time as the signature of Bulah French, with whom a separate negotiation was necessary, could be procured. While there is so little that is of a conclusive character, we hold that the presumption as to the delivery may well shift so as to conform to what we must suppose were the intentions of the parties.

The result is, that the tenants show the better title to the whole of the premises demanded in the suits against Larrabee and against Hinkley. But it is clear that the administrator's deed of the Kimball lot to Frederic French was not executed and delivered within the year; and so, although the tenant, Kimball, offers to prove that the deed was originally drawn and bore date on the day of the auction sale, and that the consideration-money was paid over to the administrator on that day, we feel constrained, by the decisions before adverted to, to hold that conveyance invalid. But Frederic French conveyed this lot by warranty deed to the tenant's grantors, and that conveyance was duly recorded and also followed

by a visible change of possession long before his deed to his brothers of his interest in his father's estate was delivered; so that the tenants acquired by Frederic French's warranty deed a good title to the one-third which he held as heir of Zadoc French; for Frederic's warranty deed of the lot must be held effectual to convey all the interest which he had in the premises at the time it was made. The result is, that the title to the Kimball lot stands thus: The demandants show no title to Ebenezer French's third, all his interest having passed to his assignee in bankruptcy before the levy under which they claim was made; the tenant shows the better title to Frederic French's third; the demandants show a good title to George French's third, and on amending their writ so as to claim one-third in common and undivided would be entitled to judgment therefor, unless the levy would be avoided by the testimony offered by the tenant for the purpose of showing fraud in the making of the levies.

The suggestion with regard to the value affixed by the appraisers to the debtors' interest would have no force in itself to show fraud; for considering that the debtors' estate was subject to a life-estate, which has only recently terminated, we see nothing very remarkable in the discrepancy between the appraised value and that which the tenant asserts to have been the actual value of the whole property.

But the tenant goes further and proposes to prove that the appraisers were induced by the misrepresentation of the creditor or his attorney to exclude all the buildings upon the land from the valuation, and to appraise it at less than its true value, on the ground that there was doubt whether the debtor had any interest in the property. We think such interference on the part of the creditor or his attorney, with fraudulent intent (of which it would be for the jury to judge), would avoid a levy in the hands of the creditor himself or of any party cognizant of the fraud when he took his title; and we cannot receive the indignant denial of the fact by the demandants' counsel as conclusive in their favor upon that point. Inasmuch as it appears that one of these demandants

was the creditor in interest when the levy was made, and also is the attorney referred to in the tenant's proffered evidence, the cause must stand for trial to give the tenant an opportunity to make good his assertions in this matter.

If fraud of this sort were practiced, one of the demandants at least was a party to it, and they cannot jointly claim the rights of *bona fide* purchasers.

The debtor, George French, had an interest in the buildings which had been erected on the land before the levy. The brick store, when it was erected, became and was a part of the realty, and George French had a vested reversionary right in it of which no subsequent legislation could deprive him. Prior to the statute of March 1, 1843, no grantee or assignee of a tenant for life or in dower could acquire a right to betterments as against the reversioner, nor could the passage of that act affect the rights of the reversioners in any improvements previously made.

No good reason is perceived why the tenant should not have the benefit of that act as subsequently reëmbodied in R. S. of 1857, c. 104, § 23, so far as any improvements made since its passage are concerned. According to the stipulations in the report, the value of these last is to be assessed by the jury unless the parties agree on some other mode of adjustment.

In conformity with the views herein expressed, the disposition of these actions is as follows: in the suits against Larrabee and against Hinkley there must be *Judgment for the tenants.*

In the suit against Kimball the demandants will be allowed upon such terms as to costs as the judge at *nisi prius* may deem proper to amend their writ so as to claim only an undivided third part of the premises, and, thereupon, *The case to stand for trial.*

CUTTING, KENT, WALTON, DICKERSON, and TAPLEY, JJ., concurred.